

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SANTINO TOMAINO,

        Plaintiff,

-against-

DONALD WILLIAMS, individually and as a police
officer of the Town of Southampton, New York and
TOWN OF SOUTHAMPTON, NEW YORK,

        Defendants.
-------------------------------------------------------------X

MEMORANDUM & ORDER

05 CV 3916 (NGG) (WDW)

NICHOLAS G. GARAUFIS, United States District Judge.

This is an action under 42 U.S.C. §§ 1983, 1988, the First and Fourth Amendments to the United States Constitution, and New York State law for malicious prosecution. Defendant Police Officer Donald Williams ("Officer Williams") and Defendant Town of Southampton ("Southampton") (collectively "Defendants") have filed the instant motion for summary judgment, which is now before the court. For the reasons set forth below, the motion is granted in part and denied in part.

## I.    Background

Plaintiff alleges that on July 2, 2004, he was one of about eight people to have parked his car in an area of a parking lot which was "not specifically designated for parking," and that Officer Williams, a Southampton Town police officer, issued Plaintiff, and no other individual similarly parked, a parking ticket.[1] (Plaintiff's Affidavit in Opposition to Motion ("Pl. Aff.") at

---

[1] Plaintiff's Amended Complaint and Defendants' Statement Pursuant to Local Rule 56.1 state that the date of occurrence was July 2, 2004 (Amended Complaint ¶ 8; Defendants' Statement Pursuant to Local Rule 56.1 ¶ 1). Plaintiff's counsel neglected to file a Statement

1

¶¶ 27, 28.)

Plaintiff further alleges that posted on his car were two signs, one "relating to plaintiff's Italian heritage" and the other imparting "his view that the State Department of Environmental Conservation causes tax dollars to be wasted and should be abolished."[2] (Id. at ¶ 32.) The parking ticket "was dismissed by the Southampton Town Court after [Plaintiff] waited an hour or so for the case to be called." (Id. at ¶ 34.)

Plaintiff claims that his constitutional rights to free speech and to be free from illegal search and seizure, and his New York State common law right to be free from malicious prosecution, were violated by Officer Williams' issuance of a parking ticket. Specifically, Plaintiff alleges that the parking ticket was issued solely because of the presence of the signs on his car, which in turn chilled Plaintiff's speech, thereby violating the First Amendment. (Pl. Mem. at 2, 4-5.) Although Plaintiff nowhere specifies the nature of his Fourth Amendment claim, it appears that he alleges that the issuance of a parking ticket constituted an illegal seizure.

Plaintiff alleges several other acts of discrimination by the Southampton police

---

Pursuant to Local Rule 56.1 and in his affidavit, Plaintiff states that the ticket was issued "[d]uring or about 2000." Since Defendants have not argued that this action is time-barred, the court assumes for the purpose of this Order that the date of occurrence was July 2, 2004. Similarly, Plaintiff's bare-boned pleadings and affidavits nowhere state the exact location of the parking lot.

[2] Plaintiff does not detail in his affirmation the exact slogans posted on his car. In his brief, however, Plaintiff claims that the signs read, "I was born in Italy, I am American, America owes me nothing," and, "Abolish the DEC . . . Save People . . . Save Tax Dollars." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 2.)

department from 1994 until the charged incident, which occurred in 2004.³ Specifically, he claims, *inter alia*, that:

> 1) from 1994 until 1999, Southampton police "made a practice of following [Plaintiff] as he drove in his vehicle" and would switch the lights on the police cars on and off (Pl. Aff. ¶ 10.);
>
> 2) in 1996, a sergeant told Plaintiff that "Italians are not welcome in Southampton Town" (id. ¶ 9.);
>
> 3) in 1997, a police officer drove his car onto Plaintiff's lawn (id. ¶ 11);
>
> 4) a police officer arrested him in 1997 and told him, "You are not liked in this Town because you are Italian" (id. ¶ 15.); and,
>
> 5) in 1998, a police officer woke him at 4:00 a.m. and asked that he move his vehicle "which was parked on a short, dead-end street and not blocking traffic." (Id. ¶ 13.)

Defendants now move for summary judgment, claiming that 1) Plaintiff has not established a constitutional violation with respect to his malicious prosecution claim, 2) there is insufficient evidence to establish whether or not Southampton had a policy or custom of hostility towards Plaintiff, 3) Officer Williams is entitled to qualified immunity since his conduct was objectively reasonable, and 4) Plaintiff failed to allege an actual chill of his right to free speech. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Mem.")

---

³ For the purposes of this motion, the court treats the uncharged allegations, which appear to be time-barred, merely as background evidence. See United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 52 L. Ed. 2d 571, 97 S. Ct. 1885 (1977) ("[A] discriminatory act which is not made the basis for a [lawsuit] . . . may constitute relevant background evidence in [the lawsuit].")

3

at Points II to V.)[4] Each claim will be addressed in turn.

## II. Discussion

### A. *Standard of Review*

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, i.e., where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Fed. R. Civ. P. 56(c) and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)) "A fact is material for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party bears the burden of establishing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving party has met this burden, the non-moving party has the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[t]he nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121

---

[4] Defendants neglected to paginate their brief. Consequently, in referencing their brief, the court will cite to the relevant point numbers.

4

(2d Cir. 1990) (internal quotations and citations omitted); see Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the opponent can create a genuine issue of material fact only by citing competent, admissible evidence. Glasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) (citing Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999)).

*B.  Malicious Prosecution*

Defendants summarily allege that Plaintiff has failed to establish that he was maliciously prosecuted either under New York State common law or as part of his § 1983 claim. (Defendants' Brief at Point IV.) Defendants' sole contention is that a "single parking ticket does not rise to the level of a constitutional injury to the plaintiff." (Id.)

In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, see, e.g., Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997), cert. denied, 522 U.S. 1115, 140 (1998), and establish the elements of a malicious prosecution claim under state law, see, e.g., Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995); Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir. 1989). To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice, without probable cause, and was terminated in his favor. Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002); see, e.g., Murphy v. Lynn, 118 F.3d at 947; Broughton v. State, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310, cert. denied, 423 U.S. 929 (1975).

Despite Plaintiff's allegation that "he was prosecuted without probable cause," (Pl. Mem. at 8.), Plaintiff, himself, acknowledges that he was parked in an area "not specifically designated

for parking." (Pl. Aff. at ¶ 28.) Consequently, Officer Williams had probable cause to issue Plaintiff a parking ticket. Plaintiff's malicious prosecution claim must therefore fail, and I grant Defendants' motion for summary judgment on this claim.

C.  *Municipal Liability Under § 1983*

Defendants next claim that Plaintiff has failed to provide sufficient evidence to support a claim against Southampton pursuant to § 1983. Specifically, they claim that Plaintiff has failed to show that the town had a policy or custom that was responsible for the alleged deprivation of constitutional rights. (Def. Mem. at Point II.)

Municipalities have been considered "persons" for the purpose of § 1983 liability since the Supreme Court reversed its prior prohibition on municipal liability in Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658 (1978). Monell established that municipalities and other local government units could be sued directly under § 1983, as long as they were only held responsible for official policy and not under a respondeat superior theory. Id. at 690-94. "Official policy" can be found one of three ways. First, if acts are "officially sanctioned or ordered" by the municipality, it can be held responsible. City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (internal citations omitted). Second, a "plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. at 127 (internal citations omitted). Finally, municipalities can be held responsible for unconstitutional actions by individuals with "final policymaking authority" as defined by state law. Id. at 123.

There is no evidence in the record to support the first theory, since there is no evidence

suggesting an official sanction of discrimination within the town. Similarly, there is nothing to suggest that Officer Williams had "final policymaking authority" for the town. See Rookard v. Health & Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983) ("An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions.") Whether Plaintiff has established that the town of Southampton had a "widespread practice" of promoting unconstitutional acts, though, is a closer call.

Construing the facts in the light most favorable to Plaintiff, the non-moving party, the statements by various Southampton police officers to Plaintiff insinuating that they were harassing Plaintiff based upon his Italian heritage suggest that the town may have had a custom of discrimination. This alleged discrimination resulted in the alleged deprivation of Plaintiff's right to speak freely about his heritage. Despite Defendants' claim that the ticket issued by Officer Williams was "an isolated incident unconnected to any others" (Def. Mem. at Point II), Plaintiff's sworn testimony that police officers had made comments about Plaintiff's Italian ancestry, combined with the sign indicating Plaintiff's ancestry which was located on his car when ticketed by Officer Williams, sufficiently establishes a question for the jury as to whether the town had a policy of discrimination based upon Plaintiff's Italian ancestry which, in turn, chilled Plaintiff's speech regarding his heritage. Defendants' motion with respect to the First Amendment claim, therefore, is denied.

With respect to the Fourth Amendment claim, however, there is nothing to suggest that the Town had a policy of illegally seizing Plaintiff. Because Plaintiff, himself, admits to having parked in an area "not specifically designated for parking," the officer and, in turn, the Town, did not violate Plaintiff's constitutional rights by issuing a parking ticket. Defendants' motion with

7

respect to the Fourth Amendment claim is granted, and Plaintiff's claim against the Town of Southampton for violating his right to be free from unlawful search and seizure is hereby dismissed.

### D. *Qualified Immunity*

The doctrine of qualified immunity shields government officials from civil liability for "actions taken in their official capacity, if those actions were objectively reasonable in light of clearly established rules then extant." Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist. 423 F.3d 153, 158, (2d Cir. 2005) (internal citations omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (citations omitted).

The burden for proving qualified immunity "rests with the defendant." Gomez v. Toledo, 446 U.S. 635, 639-41 (1980). In cases involving proof of a defendant's intent, "[b]are allegations of malice" are insufficient to rebut a showing of qualified immunity made by a defendant. Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). Therefore, "[e]vidence concerning the defendant's subjective intent is simply irrelevant to that defense." Crawford v. Britton, 523 U.S. 574, 588 (1998).

Officer Williams claims that he is entitled to qualified immunity because, "the facts alleged show that [Officer Williams'] conduct did not violate plaintiff's constitutional rights," since there are "no facts to support a conclusion that [his] actions violated clearly-established rights." (Def. Mem. at Point III.) Plaintiff argues that Officer Williams "deliberately falsely

8

charge[d]" Plaintiff for improperly parking his car, and that his conduct was the result of Plaintiff's sticker concerning the DEC. (Pl. Mem. at 7.) Notably, Plaintiff does not allege an equal protection violation. Rather, he asserts First and Fourth Amendment violations.

### 1. First Amendment Claim

Plaintiff asserts that Officer Williams violated his First Amendment right to free speech by issuing a parking ticket based upon statements made by Plaintiff on his car. Construing the facts most favorably to the Plaintiff – that Officer Williams saw the sign on Plaintiff's car related to Plaintiff's Italian heritage[5] and, as a result, issued Plaintiff a parking ticket – Officer Williams violated clearly established law. See, e.g., Rankin v. McPherson, 483 U.S. 378 (1987) (holding that the Government may not retaliate against an individual for exercising First Amendment speech rights). That he acted with the malicious intent to deprive Plaintiff of his right to free speech, as opposed to lawfully issuing a ticket for an illegally parked car without considering the sign on Plaintiff's car, is belied by the fact that of eight cars illegally parked, Officer Williams ticketed only one – Plaintiff's. As such, improper motive can be inferred from the facts before this court, and he is denied qualified immunity with respect to this claim.

### 2. Fourth Amendment Claim

Plaintiff appears to assert that he was unlawfully seized by Officer Williams' issuance of a parking ticket. Therefore, in order to establish that Defendant has qualified immunity, he must show that Officer Williams believed his actions to be lawful and that he was "objectively

---

[5] For the purpose of this motion, the court construes the facts in the light most favorable to Plaintiff. Consequently, the court assumes that based upon Plaintiff's prior history with the Southampton Police Department, Defendant saw and reacted to the sticker concerning Plaintiff's Italian ancestry and not the sign related to the DEC, since there is nothing in the record to suggest that the officer would have retaliated against Plaintiff for such a sign.

9

reasonable" in doing so. See Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995). By Plaintiff's own admission, he parked his car in an area "not specifically designated for parking." (Pl. Aff. at ¶ 28.) Therefore, Officer Williams was merely enforcing the law, and did not subject Plaintiff to an unlawful seizure. See Eagleston v. Guido, 41 F.3d 865 (2d Cir. 1994) (granting qualified immunity to police officer upon finding his failure to act on complaint of domestic dispute to be "objectively reasonable," despite pattern of police failure to investigate such claims, because there was lack of probable cause to effect arrest). Therefore, Officer Williams is granted qualified immunity, and Plaintiff's Fourth Amendment claim with respect to Officer Williams is dismissed.

### E.   *First Amendment Claim*

Defendants summarily claim that because Plaintiff fails to allege an "actual chill[ing]" of his right to free speech, summary judgment must be entered in favor of Defendants. (Def. Mem. at Point V.)

It is well established that "First Amendment rights may be violated by the chilling effect of governmental action that falls short of a direct prohibition against speech." Aebisher v. Ryan, 622 F.2d 651, 655 (2d Cir. 1980). Accordingly, the First Amendment prohibits government officials from encouraging the suppression of speech in a manner which "can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request." Hammerhead Enters., Inc. v. Brezenoff, 707 F.2d 33, 39 (2d Cir. 1983).

Construing the facts in the light most favorable to the Plaintiff, after being repeatedly discriminated against and harassed for being of Italian descent, Officer Williams' ticketing of

10

Plaintiff's car, which bore a sticker indicating Plaintiff's Italian heritage, could reasonably be interpreted as punishment for Plaintiff's speech. Therefore, it is reasonable to infer that Plaintiff's speech concerning his heritage, while not directly prohibited, was nevertheless chilled. See Laird v. Tatum, 408 U.S. 1, 12-13 (1972) (holding that "constitutional violations may arise from the deterrent, or 'chilling' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights."); Colombo v. O'Connell, 310 F.3d 115, 117 (2d Cir. 2002) ("Colombo need not show that she was *silenced* by O'Connell's threatened suit – the First Amendment protects the right to free speech so far as to prohibit state action that merely has a chilling effect on speech.) (emphasis added). Defendants' motion for summary judgment on the First Amendment claim is therefore denied.

### III. Conclusion

Both Defendants are granted summary judgment with respect to Plaintiff's Fourth Amendment and malicious prosecution claims, and denied summary judgment with respect to Plaintiff's First Amendment claims. Jury selection shall commence on Tuesday, November 13, 2007 before a magistrate judge, and trial shall commence before this court on Monday, November 20, 2007. The court also notes Plaintiff's failure to submit a statement as required by Local Rule 56.1. Consequently, the court hereby places the parties on notice that they shall be required to carry out all pre-trial and trial obligations and to follow the court's pre-trial and trial

procedures as set forth in the Federal Rules of Civil Procedure, and the rules of this district and this court. Failure to do so by either party may result in sanctions.

SO ORDERED.

/signed/

Nicholas G. Garaufis
United States District Judge

Dated: September 14, 2007
      Brooklyn, New York